UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| TIMOTHY ALAN LAMB, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 13-cv-1976 (TSC) |
| | ) | |
| ERIC HOLDER, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

When the FBI terminated Plaintiff Timothy Alan Lamb ("Lamb"), it determined he had

engaged in gross misconduct, rendering Lamb ineligible to elect to continue health insurance

coverage. This lawsuit arises from that determination. Lamb's first cause of action seeks

judicial review of the FBI's "gross misconduct" determination. His second cause of action

asserts that he was deprived of the right to continued health insurance coverage without due

process in violation of the Constitution. Before the Court is Defendant's Motion to Dismiss the

Complaint for lack of subject matter jurisdiction and failure to state a claim for relief. For the

reasons discussed below, the Court grants Defendant's motion.

### I.    BACKGROUND

Lamb was an FBI employee from October 1995 to August 2013. (Am. Compl. ¶ 6). On

February 28, 2013 Lamb received a letter (the "Feb. 28 Letter") from the FBI's Office of

Professional Responsibility ("OPR") proposing to dismiss Lamb based on allegations of a lack of

candor, not under oath. (*Id.* ¶ 8; Def. Ex. A (filed under seal)). Separate from the matters raised

in the Feb. 28 Letter, Lamb received notice on April 29, 2013 of another investigation into

allegedly illegal conduct which took place at least 11 years earlier.  (Am. Compl. ¶ 11; Def. Ex. F (filed under seal)).  This separate investigation was initiated in light of statements Lamb made in a pre-polygraph interview in which he admitted to this conduct.  (Def. Ex. F (filed under seal)).  Plaintiff, through counsel, submitted a written response to the Feb. 28 Letter on May 6, 2013 and appeared at a videoconference oral hearing on the matter on May 8, 2013.  (Am. Compl. ¶ 10; Def. Ex. B (filed under seal)).  After an interview regarding the additional set of allegations, on June 6, 2013 Lamb signed a sworn statement concerning his 2002 and 2003 conduct.  (*Id.* ¶ 11; Def. Ex. G (filed under seal)).  He also provided an 11-page self-prepared addendum to the sworn statement in which he addressed the allegations and made specific reference to the matters raised in the Feb. 28 Letter.  (Def. Ex. G (filed under seal)).  Lamb alleges he was "not allowed to present a defense to the new allegations" and "was not afforded an opportunity to respond to any proposed discipline based on the new allegations."  (Am. Compl. ¶ 12).

OPR issued a letter to Lamb on August 14, 2013[1] (the "Aug. 14 Letter") dismissing Lamb from the FBI, based on both sets of allegations.  (Am. Compl. ¶ 12; Def. Ex. C (filed under seal)).  The Aug. 14 Letter stated the dismissal was a final decision and not appealable. (*Id.*)  The Aug. 14 Letter stated that Lamb had engaged in "gross misconduct," a finding which precluded Lamb from electing to receive continued health insurance coverage.  (*Id.* ¶ 13).  Lamb had the opportunity to appeal the gross misconduct finding, an opportunity he took advantage of by submitting a 14-age appeal letter on August 30, 2013.[2]  The FBI upheld the gross misconduct determination on September 17, 2013.  (*Id.*; Def. Ex. E (filed under seal))  Three months later, on

---

[1] Lamb alleges he did not receive the letter until August 26, 2013.  (Am. Compl. ¶ 12).

[2] The bulk of this appeal letter focuses on the allegations identified in the Feb. 28 Letter, not the additional set of allegations.  (Def. Ex. D (filed under seal)).

December 13, 2013, Lamb filed this suit against Attorney General Eric Holder in his capacity as head of the Department of Justice.

## II.    LEGAL STANDARD

### a.  Motion to Dismiss for Lack of Jurisdiction

Federal courts are courts of limited jurisdiction.  *See Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction.")  The law presumes that "a cause lies outside [the Court's] limited jurisdiction" unless the plaintiff establishes otherwise.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S 375, 377 (1994).  When a defendant files a motion to dismiss a complaint for lack of subject matter jurisdiction, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence.  *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992); *Shekoyan v. Sibley Int'l Corp.,* 217 F. Supp. 2d 59, 63 (D.D.C. 2002).

In evaluating a motion to dismiss under Rule 12(b)(1), the Court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged[.]'"  *Am. Nat'l Ins. Co. v. F.D.I.C.,* 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi,* 394 F.3d 970, 972 (D.C. Cir. 2005)).  Nevertheless, "'the court need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions.'"  *Disner v. United States,* 888 F. Supp. 2d 83, 87 (D.D.C. 2012) (quoting *Speelman v. United States,* 461 F. Supp. 2d 71, 73 (D.D.C. 2006)).

Finally, when considering a motion to dismiss for lack of subject matter jurisdiction, the court "is not limited to the allegations of the complaint."  *Hohri v. United States,* 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds,* 482 U.S. 64 (1987).  Rather, "a court may

consider such materials outside the pleadings as it deems appropriate to resolve the question [of]

whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics,* 104 F.

Supp. 2d 18, 22 (D.D.C. 2000) (citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C.

Cir. 1992)).

### b.  Motion to Dismiss for Failure to State a Claim

A motion to dismiss under Rule 12(b)(6) for failure to state a claim tests the legal

sufficiency of a complaint.  *Browning v. Clinton,* 292 F.3d 235, 242 (D.C. Cir. 2002).  "To

survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true,

to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678

(2009) (internal quotation marks and citation omitted).  "The plausibility standard is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

unlawfully." *Id.* (citation omitted).  Although a plaintiff may survive a Rule 12(b)(6) motion

even where "recovery is very remote and unlikely[,]" the facts alleged in the complaint "must be

enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly,* 550

U.S. 544, 555-56 (2007) (internal quotation marks and citation omitted).  Moreover, a pleading

must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a

cause of action[.]" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555).  If the facts as

alleged, which must be taken as true, fail to establish that a plaintiff has stated a claim upon

which relief can be granted, the Rule 12(b)(6) motion must be granted.  *See, e.g., Am. Chemistry*

*Council, Inc. v. U.S. Dep't of Health & Human Servs.*, 922 F. Supp. 2d 56, 61 (D.D.C. 2013).  In

deciding a 12(b)(6) motion, a court may "consider only the facts alleged in the complaint, any

documents either attached to or incorporated in the complaint and matters of which [the Court]

may take judicial notice." *E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624

(D.C. Cir. 1997).  However, when the parties present material outside the pleading and have "had

a reasonable opportunity to contest the matters outside the pleadings such that they are not taken

by surprise," the court may treat the motion as one for summary judgment.  *Cost v. Social Sec.*

*Admin.*, 770 F. Supp. 2d 45, 49 (D.D.C. 2011).

III.    ANALYSIS

a.  **Subject Matter Jurisdiction**

i.  **First Cause of Action**

Although Plaintiff styles his first cause of action as seeking judicial review of the FBI's

gross misconduct determination, Plaintiff also contends that his underlying termination "did not

afford him Constitutional,[3] statutory and regulatory due process" and was itself "arbitrary,

capricious, not in accordance with law, not compliant with statutory and/or regulatory

provisions, and failed to observe the procedures required by law."  (Am. Compl. ¶¶ 16-17).

Mindful of its responsibility to draw inferences in favor of the Plaintiff, *Am. Nat'l Ins. Co.*, 642

F.3d at 1139, *Am. Chemistry Council, Inc.*, 922 F. Supp. 2d at 61, the Court will construe this

cause of action as seeking review both of the underlying termination and the FBI's gross

misconduct finding.  Neither, however, is within the subject matter jurisdiction of this Court.

The Civil Service Reform Act ("CSRA") "comprehensively overhauled the civil service

system" and created an "elaborate new framework for evaluating adverse personnel actions

against federal employees."  *United States v. Fausto*, 484 U.S. 439, 443 (1988) (internal citations

and alterations omitted).  Chapter 75 of the CSRA provides for the appeal of a termination

decision to the Merit Systems Protections Board and subsequent review by the Court of Appeals

for the Federal Circuit.  *Fausto*, 484 U.S. at 446-47.  Not every federal employee, however, is

---

[3] The Court will address Plaintiff's constitutional allegations in connection with Plaintiff's Second Cause of Action.

entitled to these protections.[4]  *Id.*  Fausto was an employee of the Fish & Wildlife service in a position that did not have a right of appeal to the MSPB.  He was terminated from his position but after filing a formal grievance that termination was reduced to a 30-day suspension.  He was offered backpay for the time period he was terminated, excluding the 30 days of suspension, but claimed that even the 30-day suspension was improper, and therefore he was due an additional 30 days of pay.  *Id.* at 441-442.  He filed a suit in Claims Court for those 30 days of backpay under the Back Pay Act, 5 U.S.C. § 5596.  *Id.* at 443.

The Supreme Court held that Fausto was unable to bring any claim under the Back Pay Act because the CSRA was the exclusive avenue of judicial review of federal personnel decisions, and the CSRA provided no form of review of the decisions Fausto challenged.  *Id.* at 447.  The Court found that Congress' decision to exclude non-preference members of the excepted service from the judicial review provisions of the CSRA was preclusive, barring any review not authorized by the CSRA.  *Id.* at 447 (finding a "clear congressional intent to deny the excluded employees the protections of Chapter 75 – including judicial review – for personnel action covered by that chapter"); *see also Elgin v. Dep't of Treasury*, 132 S.Ct. 2126, 2133 (2012) ("the CSRA's elaborate framework demonstrates Congress' intent to entirely foreclose judicial review to employees to whom the CSRA *denies* statutory review") (internal citations omitted, emphasis in original).  The D.C. Circuit has summarized the exclusivity of the CSRA succinctly: "what you get under the CSRA is what you get."  *Fornaro v. James*, 416 F.3d 63, 67 (D.C. Cir. 2005).

---

[4] The parties do not dispute that Lamb, as an FBI employee, is excluded from the agency and judicial review provisions of the CSRA. (*See* Def. Mem. 8; Pl. Opp'n 14).  Plaintiff argues, however, that a legally incorrect statement in the FBI's termination letter that the finding of gross misconduct "may then be appealed only through suit in U.S. District Court," creates, or at the very least, does not bar, subject matter jurisdiction. (Pl. Opp'n 8).  No action of the parties can confer subject matter jurisdiction on the court, nor can principles of estoppel. *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).  The letter, then, is of no consequence to the present inquiry.

Like Fausto, Lamb is excluded from the CSRA provisions regarding termination, and therefore his termination is not subject to judicial review.  5 U.S.C. § 7511(b)(8) (excluding employees of the FBI from subchapter concerning removal).  The determination that Lamb was fired for gross misconduct is similarly insulated from judicial review.  5 C.F.R. § 890.1112.  While decisions concerning "pay, benefits, or awards" are generally within the scope of the CSRA, 5 U.S.C. § 2302(a)(2)(A)(ix), such decisions taken at the FBI, however, are not.  5 U.S.C. § 2302(a)(2)(C)(ii)(I).  All of the determinations on which Lamb bases his claim, therefore, fall within the umbrella of the CSRA, which provides him no avenue for judicial review.

Plaintiff argues that a catch-all jurisdictional provision in the Administrative Procedures Act ("APA") confers jurisdiction on this Court to review the FBI's determination of gross misconduct.  (Pl. Opp'n at 9.)  The APA provides that "agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review."  5 U.S.C. § 704.  Although the Supreme Court has noted that the APA's review provisions are to be given a "hospitable interpretation," *Bowen v. Massachusetts*, 487 U.S. 879, 904 (1988) (citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 140-41 (1967)), the law is clear that the relief (or lack thereof) provided in the CSRA precludes review under § 704.  *Fornaro*, 416 F.3d at 67 ("no remedy [is] available under the APA for an employment claim as to which the CSRA provide[s] no relief") (citing *Carducci v. Regan*, 714 F.2d 171, 174-75 (D.C. Cir. 1983); *Kursar v. Transp. Sec. Admin*, 581 F. Supp. 2d 7, 16 (D.D.C. 2008); *Roberts v. U.S. Dep't of Justice*, 366 F. Supp. 2d 13, 19-21 (D.D.C. 2005).

Because the Court lacks the subject matter jurisdiction necessary for it to hear Lamb's claim for judicial review of the FBI's determinations, it will grant Defendant's motion to dismiss Plaintiff's first cause of action.

### ii.   **Constitutional Claim**

Plaintiff asserts, as a second cause of action, a violation of his constitutional rights.  (Am. Compl. ¶ 20).  Specifically, Plaintiff alleges that he did not receive due process before deprivation of his right to continued health insurance coverage.  (*Id.* ¶ 20).  In addition, although contained within his "First Cause of Action," Plaintiff appears to raise constitutional claims with regard to the underlying termination insofar as he contends that his summary dismissal did not "afford him Constitutional, statutory and regulatory due process."  (*Id.* ¶ 16).

Defendant, relying on a recent Supreme Court decision, argues that the "exclusive avenue to judicial review" of Lamb's termination, whether raising statutory or constitutional claims, is through the CSRA.  (Def. Mem. 12 (citing *Elgin*, 132 S.Ct. at 2134)).  The Plaintiffs in *Elgin* were terminated for their failure to register for the Selective Service.  *Id.* at 2131.  They filed suit in District Court challenging the constitutionality of the statute barring anyone failing to register for the Service from employment in an Executive agency.  *Id.*  The District Court concluded it had jurisdiction to hear the constitutional claims, notwithstanding the CSRA, under the general federal-question jurisdiction statute, 28 U.S.C. § 1331.  *Id.*  The Supreme Court held otherwise, concluding that even employees bringing constitutional challenges to federal statutes must do so within the judicial review framework established by the CSRA, that is, through the MSPB and the Federal Circuit.  *Id.* at 2139.

This case, however, is distinct from *Elgin*.  In that case, the plaintiffs *were* entitled to review under the CSRA and the CSRA directed that review to a single court, the Federal Circuit.

132 S. Ct. at 2132.  Therefore, the Supreme Court's analysis did not need to take into account the

strong presumption that Congress did not mean to prohibit all judicial review.  *Id.* (citing

*Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 215 n. 20 (1994)).  However when a statute may

be construed to "deny any judicial forum for a colorable constitutional claim," a heightened

showing of Congressional intent is required before that construction is adopted.  *Webster v. Doe*,

486 U.S. 592, 603 (1988).  The heightened showing was not present, for example, where under

the Foreign Intelligence Surveillance Act no "express right of judicial review for third party

challenges" was provided.  *Klayman v. Obama*, 957 F. Supp. 2d. 1, 25 (D.D.C. 2013).  By

contrast, the statute enabling the Judicial Council and Review Committee provided that "all

orders and determinations, including denials of petitions for review, shall be final and conclusive

and shall not be judicially reviewable on appeal or otherwise."  *McBryde v. Comm. to Review

Cit. Council Conduct and Disability Orders of Judicial Conf. of United States*, 264 F.3d 52, 58

(D.C. Cir. 2001).  This language was sufficient to preclude all claims, constitutional or

otherwise.  *Id.* at 62-63.  The need for this heightened showing was not considered in *Fausto*,

where no constitutional claims were pressed.  *Elgin*, 132 S.Ct. at 2133 n.4; *see also Fausto*, 484

U.S. at 678 (Blackmun, J., concurring) ("the courts' common-law power to vindicate

constitutional rights is not lightly to be set aside").

It is true that the comprehensive nature of the CSRA has lead the D.C. Circuit to hold that

"*Bivens* remedies [do not exist] for civil service employees and applicants who advance

constitutional challenges to federal personnel decisions."  *Hunt v. Dep't of Agriculture*, 740 F.

Supp. 2d 41, 48-49 (D.D.C. 2010) (quoting *Spagnola v. Mathis*, 859 F.2d 223, 30 (D.C. Cir.

1988) (alterations in original).  However, the D.C. Circuit has consistently affirmed "the right of

civil servants to seek equitable relief against their supervisors, and the agency itself, in

9

vindication of their constitutional rights." *Spagnola*, 859 F.3d at 229-30.  In *Hubbard v. E.P.A.*,

for example, the D.C. Circuit concluded that while a federal employee had no viable *Bivens*

claim for money damages, a claim under the first amendment for equitable relief (in the form of

reinstatement) was viable.  809 F.2d 1, 11-12 (D.C. Cir. 1986).  Defendant has not pointed to

language in the CSRA so expressly preclusive of colorable constitutional claims as to overcome

the presumption against such preclusion.  Given the D.C. Circuit's expressed preference for

keeping the courthouse doors open to federal employees raising constitutional claims, the Court

finds it has subject matter jurisdiction to hear these constitutional due process claims under the

grant of federal question jurisdiction in 28 U.S.C. § 1331.  *Davis v. Billington*, No. 10-00036

(RBW), 2014 WL 2882679, at *6 (D.D.C.  June 25, 2014) ("In keeping with the longstanding

law of this Circuit that favors permitting plaintiffs the opportunity to bring constitutional claims

for injunctive relief in the district court, the Court finds that the CSRA does not bar this Court's

jurisdiction to address the plaintiff's constitutional claims"); *see also Hardy v. Hamburg*, No. 11-

cv-1739 (RBW), 2014 WL 5420037, at *17 (D.D.C. Sept. 23, 2014), *Coleman v. Napolitano*, No

13-cv-1307 (BAH), 2014 WL 4185190, at *4-5 (D.D.C. Aug. 25, 2014); *accord Semper v.

Gomez*, 747 F.3d 229, 242 (3d Cir. 2014) ("a federal employee who could not pursue meaningful

relief through a remedial plan that includes some measure of meaningful judicial review has the

right to seek equitable and declaratory relief for alleged constitutional violations in a 'federal

question' action filed pursuant to § 1331").[5]

---

[5] Although neither of Plaintiff's two causes of action explicitly invoke the Court's authority to issue a writ of mandamus, Lamb's complaint asserts 28 U.S.C. § 1361, conferring jurisdiction on district courts to issue writs of mandamus, as a basis for subject matter jurisdiction.  (Am. Compl. ¶ 2).  Mandamus is a "drastic" remedy to be invoked in "extraordinary circumstances."  *Fornaro*, 416 F.3d at 69.  Mandamus is proper only if: "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to plaintiff."  *Id.*  Plaintiff has not identified what "clear duty to act" the Defendant has ignored.  Plaintiff also invoked 28 U.S.C. § 1343 as a basis for subject matter jurisdiction.  This provides district courts with jurisdiction over actions 1) concerning conspiracies to interfere with civil rights; 2) deprivation under color of state law of Constitutional rights; and 3) equitable relief under Congressional acts providing "for the protection of civil

### b.  Whether Plaintiff Has Adequately Stated a Claim for Relief

The only cause of action over which the Court has subject matter jurisdiction is a narrow

one.  The Court lacks jurisdiction to address the merits of either the termination or the finding of

gross misconduct, but may entertain a claim under the Constitution that Lamb was deprived of

property[6] without adequate due process.  To state a plausible claim for relief under the Fifth

Amendment in this context, Lamb must establish that he had a "cognizable property interest that

has been jeopardized by governmental action."  *Coleman*, 2014 WL 4185190, at \*5.  Property

rights generally are not creatures of the Constitution; rather they must arise from statute or other

source of law.  *E.g.*, *Garrow v. Gramm*, 856 F.2d 203, 205-06 (D.C. Cir. 1988).  To possess a

constitutionally protected property interest, a plaintiff must have more than an "abstract need and

desire" for the property; the plaintiff must have a "legitimate claim of entitlement to it."

*Humberson v. U.S. Attorney's Office for District of Columbia*, 236 F. Supp. 2d 28, 30 (D.D.C.

2003) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)).

In the context of public employment, government employees can demonstrate the

requisite entitlement where governing law "provides that they may be discharged only for

cause."  *Id.*; *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538-39 (1985) (state employee

who by state statute could not be dismissed except for "misfeasance, malfeasance, or

nonfeasance" had protected property right).  Those employed for limited terms or at will have no

such interest.  *Roth*, 408 U.S. at 578.  Federal employees covered by the CSRA have a property

interest in their continued employment.  *Humberson*, 236 F. Supp. 2d at 31.  Those employees

---

rights, including the right to vote."  *Id.*  Lamb does not allege a conspiracy to interfere with civil rights, does not allege any actions taken under color of the laws of any state; and does not allege any actions in violation of an Act of Congress providing for the protection of civil rights.  Accordingly § 1343 provides no basis for subject matter jurisdiction.

[6] Plaintiff specifically alleges he was "deprived of a property right," the right to continued health care coverage, without due process.  (Am. Compl. ¶ 20).

not covered by the termination provisions of the CSRA, like Lamb, have no such property right.

*Garrow*, 856 F.2d at 205-06.[7]

Like statutes, regulations may create protected property interests. *Bloch v. Powell*, 348

F.3d 1060, 1068-69 (D.C. Cir. 2003). Property flows from a regulation only when the regulation

limits discretion such that a particular outcome must follow when substantive predicates are met.

*Id.* at 1069 (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 463 (1989)).

Thus, where D.C.'s Overnight Shelter Act laid out criteria for eligibility for shelter but left it to

the Shelter Office to allocate shelter space among eligible homeless families, no property right to

shelter existed. *Washington Legal Clinic for the Homeless v. Barry*, 107 F.3d 32, 36 (D.C. Cir.

1997); *accord Dungan v. Slater*, 252 F.3d 670, 676 (3d Cir. 2001) (no property right to late

retirement where regulations permitted, but did not require, Transportation Secretary to grant

waivers to mandatory retirement rules).

The statute and regulations governing the availability to federal employees of continuing

health insurance coverage upon termination cannot be read to so constrain the Attorney

General's discretion as to create a property interest. The option to elect to receive continued

health insurance coverage is to be provided to federal employees when they leave employment.

5 U.S.C. § 8905a(a). However, the option to elect COBRA is not available to employees

terminated for gross misconduct. 5 U.S.C. § 8905a(b)(1)(A). Although OPM regulations

provide a working definition of gross misconduct, *e.g.* 5 C.F.R. § 890.1102 ("Gross misconduct

means a flagrant and extreme transgression of law or established rule of action for which an

---

[7] Plaintiff argues that he is a "tenured federal employee" who cannot be "summarily dismissed without a hearing on the merits." (Pl. Opp'n 13). This conclusory argument does not save his claim. Plaintiff has alleged no facts supporting the argument that his 15-year "tenure" at the FBI, or any other factors, created an entitlement to continued employment. *See, e.g.*, *Doe v. Gates*, 981 F.2d 1316, 1320-21 (D.C. Cir. 1993) (statements in employee handbook and statements at beginning of employment creating expectation of continued employment did not create protected property interest).

employee is separated and concerning which a judicial or administrative finding of gross

misconduct has been made"), that definition must be applied by the terminating agency.  The

agency's determination that an employee is terminated for gross misconduct is "not subject to

reconsideration by OPM."[8]  5 C.F.R. § 890.1112.  Because the law and regulation leave the gross

misconduct determination to the agency (subject only to a limited internal right of appeal, 5

C.F.R. § 890.1112) without further review, it cannot be said that the requirement to offer

continuing health coverage so constrains agency discretion as to create a property interest in the

option for health insurance.  As he has pleaded no factors establishing he held any property

interest of which he was deprived, Perry fails to state a Constitutional claim.

## IV.    CONCLUSION

The Court grants Holder's motion to dismiss as to Lamb's first cause of action because

the Court lacks subject matter jurisdiction under the Civil Service Reform Act to review the

personnel actions at issue.  The Court grants Holder's motion to dismiss Lamb's second cause of

action because it fails to state a claim upon which relief can be granted, insofar as it fails to

adequately allege that Lamb was deprived of any recognized property interest.  A corresponding

Order will issue.

Dated: March 10, 2015

---

[8] Congress did not provide any statutory basis for judicial review of a federal agency's finding of gross misconduct. 5 U.S.C. § 8905a.  By contrast, there is a direct statutory mechanism for judicial review of gross misconduct findings in the private sector pursuant to ERISA.  29 U.S.C. § 1132.  This difference confirms the intent to insulate the FBI's determinations from further review, obviating any property interest which might have attached to eligibility for that continuing benefit.